Good morning. I'm Celia Ruman, and I represent Kenneth Defoor. Good morning. I'm going to try to reserve two minutes for rebuttal. This case is about a jury that was distracted, it was misled, and it was misinstructed. While I'm prepared to discuss any of the issues in the briefs, given the time constraints, I'd like to focus on and highlight the District Court's failure to follow adequate processes and apply the appropriate standards regarding the distraction that was caused to the jurors from potential jury tampering. And I'd also like to focus on the fundamental and plain misinstruction on the elements of the offenses that undermine confidence in the verdict below. Focusing on the potential jury tampering question, both the dictates of Federal Rule of Criminal Procedure 43 and the dictates of the Remmer decision were violated when the District Court conducted its own independent investigation by calling the number given to the court by the juror, an investigation that was conducted without any notice or input from the parties, nor any contemporaneous record of that investigation. In addition, Remmer was violated in this case because after the court called in two of the jurors to discuss the matter, it applied the wrong standard in questioning the jurors. Well, so what are you saying, that the court didn't notify the counsel at all of the fact that a juror reported to the bailiff, I believe, and then the information, which is fairly typical how these things come to the attention of the court? So are you saying that counsel for both the prosecutor and the defense were not at all told of that? They weren't told until after the court conducted the investigation. Apparently, it seems from the record that the juror approached the bailiff before the lunch hour, and over the lunch hour, the court conducted the calls. And then after the lunch hour, the court called in, the counsel advised them of the situation, and then— But it was a bit hyperbole that you weren't at all involved in it. Well, they weren't involved in the investigation at all because the court had already concluded the investigation as to what happened. And the court, at that point, it appears that the court concluded, and I think the record supports the conclusion, that there was a threat made. Because when the district court called in the parties, and when the district court called in the jurors, he explained what he heard in the background on these calls, and he said that what he heard— Well, he didn't call in all the jurors. There were two. He called in only two of the jurors. The one that got the call and the one that had somehow learned about the call. Well, we don't know whether that's the only other juror who learned about the call. What we know is that juror number nine got the call. She reported—I think it's a she. She reported it to the district court. The district court, when it was reported, juror number eight was present. When juror number eight and nine were brought into the court, the court inquired of juror number nine whether she had mentioned it to anyone else. The court didn't inquire of juror number eight whether he or she, I'm not sure, had mentioned it to any of the other jurors. And so what we had is the district court getting this information and not following the processes that are clearly laid out in this Court's precedent as to how to handle one of these situations. Well, I'm going to tell you, having been a trial judge and having been a trial lawyer, that hardly a trial doesn't go—you tell the people not to do anything, but there's always something that someone does wrong. So, you know, when if you, you know, you try to confine it, you know, yes, what you're saying is then every one of the jurors should have been questioned. Well, if every one of the jurors didn't even hear it, then if he had questioned every one of the jurors, then you'd be making the opposite argument, saying, well, you made this bigger than it needed to be. Well, I think that there's— I mean, yes, of course. If something's really small and then you bring in every single one, then everyone knows that something's gone on, and then it explodes into something it doesn't need to be. I think that that process is more appropriate when there isn't a concern about jury tampering. And here what we had was jury tampering. It wasn't misconduct by the juror. The juror themself didn't do anything wrong, it appears. The juror delayed notifying the court, but the court—the juror did notify the court of the contact. And so the court—this court and the Supreme Court have looked at questions involving concerns about tampering very differently than the run-of-the-mill jury— What do you think happened here? What's the jury tampering if it—if the court determined it would seem to be a stray call and some sort of a scam? What— Well, I think what this Court's jurisprudence suggests, the—the Rutherford case, which was cited by trial counsel to the—the district court, the focus isn't on the mindset of the caller. The focus is on the effect on the juror. And what happened here is the court flipped this, concluded it was a scam from what was coming from the callers, and then told the jurors that this is what it was rather than inquiring of the jurors as to what their perceptions of this was. Well, they said it wouldn't affect them at all. The court made a reasonable inquiry. What—I mean, what do you think, that they think that your client made the call? Well, I—I think that given that what the court told them was that this was someone trying to defraud regarding taxes, and that was the actual charge against the defendant, there was a concern that these jurors could have concluded that it could have come from somebody connected with the defendant. So I think there is a concern there that the defendant could have been the source of these calls. Well, they both said that it didn't affect them and that they weren't concerned about it. Well, both of the jurors said that they could be fair and impartial. They didn't indicate whether they would be distracted. And this court has—has talked about how things like body language can affect the other jurors. And—and the government has the burden to demonstrate that the other jurors weren't affected by this, and they didn't in this case. And because of that, you know, not only was there the violation of—of Rule 43 in the investigation that was outside of the presence of the jury, there was the—the misapplication of the standard. Your response would be let's ask every single one of the jurors and then make sure everyone knows about it when it appears it's only confined to two people, and then they'll really be distracted. Well, I think the first inquiry would have been to ask both of the jurors that were called in whether they had shared this information with the rest of the panel. The district court only asked Juror No. 9. He didn't ask Juror No. 8 that question. And so there was a time period between when this juror would have heard it being reported to the court and the time that it was discussed in court that Juror No. 8 could have discussed this issue with the other jurors. So the first inquiry would have been— Counsel asked the court to expand that? Yes. And I'm sorry, I don't remember the page right off the bat, but I— But did counsel in the trial say to the judge, I think you need to ask Juror No. 8 that same question? Well, not at that time, but I think at page 954— Follows it, did counsel ask the court to ask Juror No. 8 that same question? Yes, he did. And where is that in the record? At page 954 in the transcript, the defendant asked the court to find out if this was communicated to any of the other jurors. And at that point, they're talking about both of the jurors. And the court only asked Juror No. 9 the question. And because of this, and because the government has not rebutted the presumption of prejudice, Mr. DeFore asked this court to reverse and remand. I'd just like to highlight very quickly before I reserve some time, two of the jury instructions. The jury was never instructed how to determine whether this was a false claim, whether it was false, and never instructed that Mr. DeFore himself had to conspire in order to—had to enter into the agreement in order to conspire. Is there an objection by the defendant to the instructions? There is not. And that is what— Are we talking plain error at best? We are talking plain error. Okay. And — but I think the law is clear on both of these issues. What's required for false, this Court in Barker is very clear. And the Court's very clear on conspiracy, what the defendant has to actually enter into the agreement. The falseness was compounded by the government's choice to have— So just a minute. Are you complaining about the conspiracy instruction? Yes. Because it's lacking what? Because the instruction that was given on conspiracy simply says that two or more people have to agree. It didn't say Mr. DeFore has to be one of those people. And the jury was clearly confused in this case about conspiracy and complicity. And the district court directed them back to instruction number 16 that did not tell them that the government had to prove that Mr. DeFore was a member of that agreement. And here there were two other people, the co-conspirators, the co-defendants, who were tried separately and explained as co-conspirators during the trial. So the jury could have concluded on that. I'd like to reserve the remainder of my time, but we would ask the Court to reverse this conviction. Thank you. Good morning. Good morning. May it please the Court. My name is Jim Knapp, and I represent the United States Department of Justice. The defendant was convicted and charged with his daughter and son-in-law of filing 122 false refund tax claims. He was charged with tricking the clients of their tax preparation business into submitting these claims for refunds. So on the juror issue, was it the husband of one of the jurors that got the call? Or was it the juror? It's my understanding it was the juror who got the call and made a comment to her husband saying, I should let the Court know about this, and then let the Court know. Okay. And I can turn to the juror issue. Oh, let me just back up for a second. What I want to mention is, Judge Callahan, you know, your question during the defense portion was about what could have been done differently, and how if you take a different path, then that could raise new issues. And I think that's an important point to keep in mind here, because this is a plain error review standard. And there's a lot of discretion that district courts have to deal with problems. And maybe things, you know, Monday morning quarterbacking could have been done differently. But that's not what this case is about. This is not about what's the, what, you know. But it has to be adequate. You know, the Court has to adequately decide that the jury has not been tainted, or, and you have to go as far as would be appropriate. And I think what happened is, and I'll pull the... So did the juror that got the call, did she say, I told, was, the juror that got the call, was that 8? The juror that got the call... Or was that 9? ...was 9. Was 9. And then 8 is the one that was told by 9.    How can we ascertain that 8 had been told? So on ER 82, in the transcript, Tracy, at the top of the page, Tracy's the courtroom deputy for Judge Campbell. Judge Campbell is the district judge in this case. Tracy said juror number 8 was there when she told her. So we'll call in juror 8 as well. And then that's when, as defense pointed out in their portion of this oral argument, defense then said, okay, and then find out from each of them if they talked to others. Court says yes. But both sides had an opportunity to ask questions of the witnesses after the court was done. I asked a question. Defense didn't ask any questions. That's on ER 87. I think it was just overlooked that no one specifically confirmed with juror 8 that she hadn't talked to anybody about it, because she was, wasn't the person who received the call. She was just there when juror 9 reported it to the court staff. But juror 9 was specifically asked. I guess we also know from the record that none of the other jurors made a request to talk to the court. That's correct, Your Honor. And the other thing that's really salient about this is, you know, the, what we're talking about are two jurors here, and there were two alternates in the case. And there was no motion to strike these jurors. They could have done it easily at that time and just gotten rid of the issue completely. Or when it came time to select the actual jury panel for deliberations, they could have moved to strike jurors 8 and 9. They didn't do that. We instead drew the alternates by lots. Juror 8 and 9 ended up being part of the deliberation panel. But that shows two things. Number one, this was not a concern at the time. No one was really concerned about this. This was not a concern about jury tampering. That's a claim that's made on appeal. That was not a claim that was made at all during trial. This was just a weird issue. It was actually almost funny, given the context of the case. But the judge appropriately addressed it. There was no presumption of prejudice, because it's not a jury tampering issue. There was no request by the defense to deal with it any differently or strike the jurors. I want to move on briefly to the two other claims that are raised on appeal. Again, subject to plain error review, though. The first is the court's, the district court's admission of the expert testimony. The first thing I want to make clear is there are two witnesses that are discussed in the briefs. And it gets a little confusing, because their names are similar. It's revenue agent, an accountant, Shelby Bear. She was the noticed expert on tax calculations on the income, the tax withholding, and the refund claims. She walked through the tax returns, explained how the income withholding results in the refund claim, and explained how these claims are false, because tax returns are not always clear to the common person. We want to make sure that the jurors, each individually, fully understood what these income tax claims, income tax returns were reporting. Different witness, special agent Pat Bauer. He was the case agent. He was not noticed as an expert, did not testify as an expert. He was a recipient witness. He happened to be the, in addition to the case agent, the search warrant custodian when the tax preparation office, again, just to back up, the defendant, his daughter, and his son-in-law were running this tax preparation business. The claims were submitted through that business. They did a search warrant at the business. Agent Bauer explained how some of the records found at the business related to the charges in the case. The reality is it's just, it's impractical to talk about 122 allegations of false claims and tax returns without using the word false. It was not expert testimony, and there are, defense's best case on the expert testimony challenges is Scope, the second circuit case. And there are four easy ways to distinguish the situation from Scope. The first is, neither witness, agent Baer or agent Bauer, testified about the defendant's mental state. They didn't opine that the defendant knew that these claims were false. They introduced factual evidence about the falsity of the claims, the falsity of the numbers reported and that they were refund claims, and falsity of the income, the tax withholding. That was agent Baer's portion. And agent Bauer's portion was the circumstantial evidence that they knew this was false. He didn't opine that he knew it was false. He presented search warrant evidence to show that they'd been on notice through frivolous filing notices received at the business, through IRS publications found at the business, explaining that these claims were bogus and that there was no basis in tax law to pursue them. So, that's the number one point, that this was, there was no opining about the defendant's mental state. And that's something that happened in Scope, because I want to just read from Scope what the court was concerned about. In the facts section, this is at page 138, the citation for this, of course in the briefs, but it's 846F2nd135. At pin site 138, it quotes some of the witness' testimony, it is my opinion, this is a stock manipulation, sort of, somewhat complicated securities fraud case, and the witness, who's noticed as an expert, says, it is my opinion that the stock of European auto classics was manipulated and that certain individuals were active participants and material participants in the manipulation of that stock, and that these individuals engaged in a manipulative and fraudulent scheme and furtherance of that manipulation. This is very specific statutory and regulatory language that the court there felt crossed the line. Here, we just had... Well, essentially, that says it's my opinion the person's guilty. Yes. Yes, and we did not have that in this case. So, the second one kind of dovetails with the first, which is this was factual, not legal testimony. Factually false. Factually false statements of income, withholding, and refunds. The extent it bled into a legal conclusion, the court actually instructed the jury, with no objection from defense, that the 1099OID theories, these stories told to the taxpayer clients, that those were just wrong as a matter of tax law. So, to the extent it called for any sort of legal conclusion, the judge did that, not the witness. Again, that was different from scope. What was the defendant's defense at the trial? The defendant's defense was that he... There really was no defense that these claims weren't false. That was essentially conceded in opening and closing. It was instead that the defendant didn't know that they were false. That he didn't testify, but the suggestion was that he believed that these claims were legitimate. Just real quickly, because I promised four, and I will deliver on four. Number three is, unlike in scope, this was helpful information for the jury, the expert testimony from Revenue Agent Baer, because courts have found that expert testimony on tax calculations can be Number four, that Agent Baer's testimony is not based on a credibility assessment of other witnesses. That was a big concern in scope as well. Unless the court has any questions... Thank you, Counsel. Thank you, Your Honor. Judge Callahan asked you who got the call. On page 10 or, I don't know, page 30 of your brief, it says, Cura 9 reported that after being sucted, she had received a call at her house from someone claiming to be with the IRS. When she alerted the courtroom deputy to this issue, another juror, Cura 8, was present. Then it says later in the brief that the court was just, the call was received by the husband. Is it the husband or the wife, or is it both? It was two different calls. I believe there was one call, but what happened was it was reported by the court and deputy that it was a call to the juror herself, and then when the juror came in, what she actually said to the court was that it was a call that occurred while she was in court that her husband took and that they then discussed. So it's a bit unclear, but I believe that's the progression of things. The government suggests that this is somehow funny because it wasn't raised during the trial. Well, defense counsel specifically referenced Rutherford. Rutherford are two decisions of this court that deal with jury tampering. This was noted to the district court as a jury tampering issue in the cite to Rutherford. Once the prima facie case is met, the government has the burden. They are focused on what the defendant didn't do, the defendant didn't do. Well, they had the burden to demonstrate that this did not have an active. But if defense counsel had the opportunity to ask a question of either of those jurors, why didn't defense counsel? Well, I wasn't trial counsel, so I don't know. But you can't just sit on your hands. I mean, if essentially the court's made a certain determination and says to both lawyers, do you have any additional questions, then if you want to take it to the next level, that defense counsel could have asked that question if there was any suspicion of that. Well, I don't know, again, what I said, what defense counsel's mind was, but I think that defense counsel may have believed at that point that the government hadn't met its burden and, therefore, it had no need to ask any questions because the government is the one who had the burden to demonstrate that there was no adverse effect from this. So that's a possibility, but I don't know. I see that my time is up, and so with that, I'll submit. Thank you. Thank you. The case is heard and will be submitted. The court will take a brief recess.
judges: Reinhardt, Tashima, Callahan